United States Court of Appeals for the 11th circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the second day of our sitting here in Before we begin, Judge Marcus and I would like to thank Judge Douglas Ginsburg from the U.S. Court of Appeals from the District of Columbia circuit for sitting with us once again. Judge Ginsburg has sat here with us many, many times and helped us out and we're very, very glad to have him with us once again. So thank you, Doug, for being with us. Thank you. You all know our lighting system. We don't have lights, obviously, in this Zoom setup. So Ms. Tiza will tell you when your regular argument time is running to a close, when you've got a couple of minutes left. And if we take you beyond your time, then just keep going. You're on our not yours. And with that, we will begin with our first case, which is number 19-11934, United States versus Jose Antonio Morales. Mr. Caruso. May it please the court. Michael Caruso from the Federal Public Defender's Office on behalf of Jose Antonio Morales. Thank you, Mr. Caruso. I would like to begin by saying that this is a case in which the United States Department of Justice's Fourth Amendment was directed. The local police here in Fort Pierce, Florida, did not respect this principle. The affidavit that the local police detectives submitted to the state court judge lacked probable cause. And for related and overlapping reasons, the government is not entitled to the defense of good faith in salvaging the suppression of the evidence in this case. For probable cause to be established, this court, reviewing de novo, looks at the totality of circumstances. And I believe that there are a number of factors that show that the totality of circumstances did not establish probable cause. As the first point, I would like to cite Judge Wilkinson's opinion in the Lyles case from the Fourth Circuit. I think Judge Wilkinson's opinion is the fullest expression of why courts in trash pull only cases need to view that type of evidence with a healthy degree of skepticism. You know, Judge Wilkinson writing for the court referenced the Supreme Court's Greenwood case, which permitted the government to search a person's trash without a warrant. The reason, according to the Supreme Court, the government can do that is because there's a lessened expectation of privacy and a lessened connection to the house when someone puts their trash on the curbside. Ironically, as the Fourth Circuit wrote, the relevance of the trash pull evidence to determine probable cause depends on the connection to the house. So there's that inherent tension between Greenwood and these trash pull only cases. And we know in this case that skepticism should be in ultimate force because of the minimal amount of drug debris found in this case. Let me ask you a question, Mr. Cruz. Isn't one important distinction here between Lyles and this case is that here you have two distinct trash pulls on two distinct dates separated by three days. You have the trash bags being closely sealed. So it wasn't as if somebody might have just dropped it in there. And you have them juxtaposed in a position where one could reasonably infer that the bags came from the house and were attached to in that sense, in a geographic sense to the folks in the house. But isn't the fact that there were two separate and distinct pulls three days apart a distinction of some moment between this case and Lyles? I would respectfully disagree, Judge Marcus. Of course, the fact that there were two pulls in this case is a difference. But I wouldn't say that that difference is of any significant moment. You know, if you look at the cases, there's a broad consensus that one trash pull is ordinarily not sufficient. There's also a broad consensus that trash pull evidence can, of course, be used as corroborating detail. You know, if our case is in between those two pulls, I would say that we're much closer to the one trash pull line of cases. The seventh circuit put it this way. They said, well, one search turning up marijuana in trash might be a fluke to indicate a trend. Well, what's wrong with that reasoning? So I don't believe that reasoning applies in this case. You know, I'm not here to say what is a trend or what is not a trend. But I think when you look at the character of the debris found in these two pulls, strictly personal use. The first trash pull revealed a few stems of marijuana. The second trash pull, only three days later, revealed a couple of smoked blunts and the tatters of a bag that presumably is used to store tiny amounts of marijuana. So I think in our case, the two would not be a trend because of the minimal amount of debris found and actually the closeness of the pulls. I think the closeness of the pulls in this case supports our position. You know, in our briefing, I used the party analogy. So say, for example, and we're not conceding that the drugs were ever in the house, but assume for a moment that there was a party in the house on a Monday night and someone in the house smoked marijuana. So after the party, they clean up the house, they put some of the trash in the garbage, and they put it out for the pickup the next morning. Now, we know that sometimes the party debris does not get picked up all the same night of the party. So imagine the next day after the party and find these two smoked blunts and the tatters of a bag, and they put that in the trash for the Friday pickup. So I wouldn't say that in our case, it's a trend. If there was more drug debris and more debris that was indicative of trafficking, I would say the government would have a stronger case. Isn't really the heart of your argument that it's inconceivable that a prosecutor would go forward based on this utterly de minimis amount of marijuana residue in the different from suggesting that if a state prosecutor decided to go forward, that he couldn't argue that there was objectively reasonable suspicion here based on the two polls three days apart? I mean, does the de minimis amount denude the force of the PC here? Oh, absolutely, Your Honor. If you look at the totality of circumstances, and I'll get to the connection to the house, the de minimis amount of drug debris in this case, in my mind, and our argument is, it doesn't prove the continual activity that the Fourth Amendment Warren and probable cause requirements demand. And if you look at cases, even though they're make the point that personal use marijuana is is ordinarily bought and consumed in a very prompt fashion. And I think the two polls with the minimal drug debris with the polls being so close in time, that is the best case the government has that marijuana was smoked in the house. But what the what the affidavit must must show is not whether Matt marijuana was in the house at one point in the past, but whether it's currently in the house. And I think the the Warren affidavit just has no evidence to show that at the at the time that the the affidavit was submitted to the state court judge that marijuana was currently in the house. And I also can I ask you to turn to the good faith exception issue. I'm sympathetic to your baseline constitutional argument about probable cause. But given where the circuits are on the probable cause established or not established by trash poles in cases similar to this one. Tell me why you believe the good faith exception does not apply. Well, one, before I fully answer your question as a baseline, of course, the government has the burden to prove good faith. And the government chose to introduce no extrinsic evidence on that point. With regard to the substance of their good faith defense, you know, we would say that a case was not he had only been a detective for two months, seemingly had no experience with submitting affidavits for warrants. In fact, this could have been his first try. We don't think a reasonably well trained officer counsel two minutes, please. We don't believe a reasonably well trained officer would have relied on this warrant because of the minimal amount of drug debris. And that the fact that there was no connection the trash to the house. If you look at the Leonard case from the Seventh Circuit, the case that Judge Marcus referenced earlier, the core holding of Leonard was that there had to be some indicia within the trash to that that connected that trash to the house. That is a flat out holding of that case. In our case, the magistrate judge not only wrongfully assigned the burden to Mr. Morales, but also ignored that part of Leonard's holding and coming to her determination that there was good faith here. Something that you had just said, Mr. Caruso, did the district judge misapprehend the burden? Oh, it's unclear whether the district court did because Mr. Morales' trial lawyer did not make that point in his objections. So there's no evidence either way from the written material that the district court misapprehended that. Now she did adopt the R&R in whole, which and the R&R did shift the burden to the defense. So as to that point, that's our best evidence of the district court's error. I have to make a clarification here that the magistrate in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth. No, there was some issue litigated below whether the officer knew that the adjacent, the lot that was adjacent to the house was an area where marijuana was smoked. He said he didn't know that at the time, although he conceded at the hearing that he knew that the particular neighborhood in which the residence was located was known for drug use on the streets or in that neighborhood. In your testimony, you're not saying that the magistrate was misled by false information that the affiant knew was false or should have known was false. No, Your Honor, we did not. We did not raise that on appeal. Is there any indication that the magistrate wholly abandoned his judicial role in entering the search warrant here? You know, I think that depends on how you define that concept. You know, our position that this was a bare bones affidavit and did not establish probable cause. Disregarding the judicial role, he speaks something more than the magistrate made a mistake. Right. We don't have any evidence besides the fact that he seemingly rubber stamped this affidavit. You know, to more fully answer Judge Jordan's question about good faith, you know, if you look at the state law cases that both parties have cited, that there is nothing in those cases upon which law enforcement officers would most likely be trained to lead them to believe that two trash poles by relying exclusively on two trash poles with minimal drug debris and with no connection to the house within the trash would suffice. Either Jacobs, you know, which had much more evidence like surveillance, anonymous tip, you know, database searches, found found PC, but that's not a trash pull only case. And the cases of Rawlinson and Gessel, which are trash pull only cases, I think would lead a reasonably well trained officer not to rely on this warrant based on the bare bones affidavit. Mr. Caruso. Oh, I'm sorry, Judge Ginsburg. Briefly, Mr. Caruso, is there any reason that we should discount the fact that the officer was aware of the tip that doesn't show up in the affidavit? Yes, Your Honor, I don't think this court should properly consider that. There are cases that say in the good faith determination, the reviewing court can review extrinsic evidence, but that extrinsic evidence must be presented to them. That evidence wasn't presented to them at the hearing before the magistrate judge. In fact, at one point, Mr. Morales, defense lawyer was asking, did you have anything more like a tip? And the government stood silent. They didn't answer. They didn't answer that request. Also, during the evidentiary hearing in the magistrate court, Mr. Morales' lawyer did attempt to get out evidence regarding the lack of good faith. He pointedly asked the young detective whether there was any evidence in the trash linking the house to the trash. The government objected and the magistrate judge sustained that objection. So ultimately, we don't think the facts show that a reasonably well-trained officer would have relied on this warrant, which is the government's burden to prove, which- Let me ask you one final question. I know we're over and you're on our time. Thank you. I noticed that there were beyond the really de minimis amounts of marijuana residue, there were a bunch of these baggies that were specially cut. And on a bag, there was the word written or printed, I don't know which, that said, KUSH, K-U-S-H. And there was some indication from one of the agents, I believe, that that connoted something about a drug distribution product. What, if any, significance ought we to attach to that, both on the question of whether there was probable cause and on the good faith exception? So I think, Your Honor, as to both determinations, you should afford no weight to that. I submitted in my brief the pictures that the police officer submitted to the state court judge. With my eyes, it doesn't seem like several bags. It seems like one bag. And with regard to the word KUSH, I think that's consistent, again, with personal use of marijuana. What was the logo that was elicited about the meaning associated with the word KUSH? Yeah, Your Honor, so KUSH is a slang term for marijuana. It's as if I went to McDonald's and bought a hamburger with a McDonald's wrapper and I ate that burger. That doesn't mean I distributed the burger. It meant I ate it. Was this like a logo that was stamped on? Or was this something that was written on? Can we tell? Because if it was stamped on and you use the McDonald's example, that might be particularly relevant and arguably would cut against your position. So I can't tell from the picture. During the break, I can look at it more closely. But in any event, I think it's irrelevant because there's no evidence that Mr. Morales or anyone in that house was distributing drugs. When buyers of marijuana buy from distributors, it's not uncommon to have the word KUSH or other slang terms for marijuana on those bags. I don't think it's indicative of anything Mr. Morales was doing. You couldn't associate like this was a logo of somebody who was distributing marijuana in the process of selling? No, Your Honor. KUSH is a generic term, much like McDonald's. So I don't think you can import any significance to that. It does appear to be handwritten. Yeah. Thank you, Judge Ginsburg. So it seems Mr. Caruso, we've taken you way beyond your time, but you have all of your time left for rebuttal. Thank you, Your Honor. Ms. Galler, whenever you're ready. Good morning, Your Honors. Brandi Galler on behalf of the United States. May it please the court. The United States fully appreciates that the Fourth Amendment protects the sanctity of a home from unreasonable searches. But there was no unreasonable search here. Law enforcement obtained a warrant based on their discovery of marijuana evidence in Morales's trash on not one, but two occasions. The issuing judge made a practical common sense decision that that established a fair probability that the home contained additional marijuana evidence. Courts are clear that we owe that determination great deference because of the Fourth Amendment's preference for obtaining warrants. The key question is whether the issuing judge had a substantial basis to conclude that a search would uncover evidence of a crime. He did because the two trash pulls showed a pattern of illegal activity that reasonably appeared to be ongoing. But even if this court disagrees, suppression is not warranted because the good faith exception applies.  Unless the officer's reliance on that warrant was entirely unreasonable. Here, the police reasonably believe that the evidence found during those two trash pulls established probable cause. There was no case that the defense has cited that indicates otherwise. No case where there were two trash pulls like we had here where a court found that that was insufficient for probable cause. Can I ask you a question, please? Of course. And I want to shift the facts in this case a little bit because I want to see if I can figure out where your dividing line is. So if this case involved only one of the trash pulls and you can pick either the first or the second, would there in your opinion have been probable cause? I do not believe we would support that that was enough to suffice for probable cause here based on the case law, both in the state of Florida that would have been expected to abide by directly or the entire body of case law out there. Where it's not 100% that one trash pull cannot be enough. We can look at the case in Briscoe out of the 8th Circuit where there they did only have one trash pull, but it consisted of 40 marijuana seeds that were recovered and 25 marijuana stems. So there the amount of debris that was recovered was considered to be sufficient enough that even though it was only one trash pull, that was enough to believe that a future search would result in additional evidence being recovered. So I want to make sure I have your position correct. Your position is that sometimes one trash pull might be enough depending on what is gained from that trash pull. But in this case, if all you had was one of the two trash pulls here without any other corroborating evidence, that would not have been enough for probable cause. That's correct, Your Honor. Certainly, for sure, the first trash pull that resulted in only two to three marijuana stems being recovered, certainly we would not pursue that here. We would not support that that was enough for probable cause. In the second trash pull where there were the pictures disclosed in discovery, not that were attached to the warrant, but the pictures of the evidence that they had were at least five. It appears to be marijuana blunts. That is a little bit more than the three stems, but I even think there it would be a much more difficult case if there had only been one trash pull. But the fact that you have two is what is really a game changer here. All right, thank you. Ms. Keller, what do you have that ties the trash to the residents? There's no address on these envelopes or bags, right? They're placed at a adjacent to a playing field and an empty lot or something where teenagers hang around and play. I mean, it's not really very closely related to the house. We would respectfully disagree with that, Your Honor. The property is situated on the south side of the street. It is adjacent to an empty lot. Basically, the way the houses were set up there, it's a residential area and there just doesn't happen to be a home on that neighboring lot. But the search warrant was clear that the trash cans had been put out on Trash Day, Trash Collection Day for that neighborhood, and they were situated at the northwest corner of the property. And the corner next to the adjacent lot? It is next to the adjacent lot. Yes, Your Honor. But that location is at the end of the driveway next to the street for trash pickup. It is quite reasonable. We would say that trash cans that are put out in front of a residence at the end of that residence driveway reasonably would be linked to that property and not a different property. Suppose there were people in the adjacent empty lot the night before and you're smoking the marijuana. Wouldn't it make perfect sense for them to dump it in the neighbor's trash can? It's certainly possible that once trash cans are abandoned at the end of a driveway that anyone passing by could add additional material to that trash bin. However, that was an argument that was made below, and the magistrate and the district court judge both believed that it was reasonable that because the evidence that was recovered in this case was recovered from within sealed trash bags, like multiple layers of having been sealed, that it was not reasonable that the officers would believe it had been discarded by a passerby. Thank you. What about this KUSH business? What did that mean? What was the evidence that was presented concerning the word KUSH? Was it on one bag? Was it on more than one bag? Was it handwritten? Was it stamped? The evidence on that, Judge Marcus, is that there were, in the affidavit, it says that there were several bags recovered that were vacuum-sealed baggies consistent with transporting marijuana or any form of narcotic. One of the baggies had handwritten the word KUSH on it, and the officer testified, and I believe put in the warrant,  Now, whether we can get much more out of that, as far as whether that bag indicated that this was a trafficker, as opposed to a consumer of marijuana, I don't think that we can draw any conclusions. Is it truly plausible that a consumer in the home might have bought a glad bag that someone who sold it had written on it, other than that the occupant of the home was distributing simply because somebody had written it on the bag? I do believe that that's correct, Your Honor. Given the small amount of the marijuana, the inference that it was a small possession issue seems far more likely than that this is somebody who was selling or distributing, right? I don't know, Your Honor, that we can say one is more likely than the other. I think what is known is that the baggie likely contains marijuana, whether that was on the packaging end by the distributor. I think it's more likely that if you find the barest shards of marijuana, not even a whole joint in a bag, sitting in a can outside of a house, that it was far more likely that it was somebody in the house who had smoked the marijuana than that the occupant was distributing marijuana or selling. Given the infinitesimally small quantity, doesn't that yield a reasonable inference that the occupant was not distributing but only consuming? Now, that may not denude the warrant of its probable cause, but it certainly tells us something about the character of what's going on in the house, doesn't it? Well, Your Honor, two points on that. First, this was a state search warrant for any illegal activity related to marijuana. So the search warrant didn't necessarily need to find evidence of the trafficker of marijuana. Marijuana possession is still illegal. And so even if it were only limited to personal use or possession of marijuana, that would be enough to justify a search warrant for additional evidence of a crime. Let me ask you a question. I'm sorry, I didn't mean to cut you off. That's okay, Your Honor. Second, I wanted to pull in the good faith aspect of our argument to say that we do know from the PSI that there had been an anonymous report of trafficking of Mr. Morales from the residence. The tip was in the PSI. In paragraphs four and five, it indicates that the information provided to the police was that Mr. Morales was selling narcotics from the residence. So that... Where do we learn that, the anonymous tip? That comes from the testimony of an officer? It comes from the PSI, which was unobjective to... Was there any testimony from the officer? There was not, Your Honor. No. That's right. We only get that from the PSI. The hearing testimony was very limited. Although the defense initially had alleged these misstatements that the officer had lied in the affidavit, he wasn't even able to present enough evidence of that to even warrant a hearing on that. So the hearing and the testimony that was elicited was elicited only on a very narrow issue of whether there had been an omission from the affidavit. Tell me where I would find it in the PSI and what exactly it says. Yes, Your Honor. It's in paragraphs four and five of the PSI. And I don't have the exact language right in front of me, but it does say that law enforcement received an anonymous tip that the defendant was selling narcotics from, and then it listed the residence, which was the target residence upon which the search warrant was applied. Is Mr. Caruso correct that the detective was asked at the suppression hearing, whether or not there was any other information that the officers may have had based on their investigation? And the answer was no. I do not recall that testimony. Two minutes, counsel. Two minutes, please. Sorry. Thank you, Ms. Tiza. You're welcome. So I'm unable to say for sure that it, I'm hesitant to say that that did not occur if Mr. Caruso says it did. However, I don't recall that testimony myself. And we consider this evidence for purposes of good faith, an anonymous tip that dope was being sold from the house in paragraphs four and five of the PSI and was nothing more. We probably consider that as an indicia of good faith. I believe so, your honor. And that's based on the Martin case from this court indicates that when we're considering good faith, we are not limited to the four corners of the affidavit. We can consider other evidence from the record. In this case, because this court is making a DeNovo determination of whether there was good faith, the record includes this undisputed fact from the PSI that there was an anonymous tip that the defendant was selling narcotics from that residence. So, Ms. Kelly, you said the Martin case okays on looking at expensive evidence, but the counsel for the defendant here pointed out this was not put in evidence. This was not mentioned in the hearing, the reference to the tip. So when you say the record, you mean just because it appears in the PSI, untested? Our position, Judge Ginsburg, is that the record before the court at this point, because your honors are making a DeNovo determination, you do have that information before you and should be able to consider it. But it's particularly interesting to me here with regard to that evidence. One, it doesn't find its way into the affidavit. It would have seemed to me to be a relevant fact by no means enough, but a relevant fact when taken in concert with the other evidence. Two, the affiant gets on the stand at a suppression hearing. He's never asked and never says word one about it. Three, it appears in paragraphs four and five of the PSA almost as a passing reference. It's not used in any way by the prosecutor or at the time of sentencing as a fact of any moment. It strikes me as terribly thin rule upon which to suggest good faith. I think that you are technically right that it's there and it was undisputed, but this is not the most powerful piece of evidence it seems to me to support good faith. I may be missing something here, but it doesn't strike me as being worth very much. That may be a fair assessment, Your Honor. We are not relying on that exclusively by any stretch. It simply was one additional piece of information that we believe the court could consider. I have found the exact language from the PSI if I can read it for the court. In paragraph four, it says on or before a particular date before these warrants were applied for. Law enforcement received information from an anonymous source who stated the defendant, Jose Antonio Morales was selling narcotics from his residence located at, and then it gives the address that was the target. Then paragraph five, based on anonymous information, the anonymous information, the St. Lucie County Sheriff's Office conducted two trash polls. And then it goes on from there. I don't think we would have expected this information on the trash polls to be very relevant at sentencing. Since the sentence was based on the gun that was recovered once the warrant was executed. But I take it the prosecutor who conducted the suppression hearing never elicited any of this information by way of predicate or preface. They did not, Your Honor. Is that a normal thing that a prosecutor would ask? Perhaps, Your Honor. How did you get started here? Why did you go into the trash? Your Honor, you are 100% right if this had been a standard suppression hearing. However, there was not going to be a hearing at all. It was going to be limited to oral argument until the court decided, well, you've raised this issue now about the empty lot here at oral argument that wasn't even included in the briefs. Everything that was in your briefs is not enough to even have a testimony elicited. However, now that you've raised this extra issue, we'll give you the benefit of the doubt and we will take testimony on the issue of the potential omission related to the empty lot. So under those circumstances, Your Honor, there is some, I think that provides some explanation for why the prosecutor did not go into great detail about what led them to conduct these anonymous, I'm sorry, the trash pulls. Thank you. All right. Thank you, but Scott, are we... No, go ahead, Judge Ginsburg. I think we can say, looking at the PSI, we can infer from law enforcement received information that, as you read at the anonymous source, that when it says based on the anonymous source, the Sheriff's office conducted the two trash pulls, the very least I think that tells us that the officers who executed the trash pulls were made aware. I mean, they wouldn't be told, go out and pull trash out of this or get a warrant and pull trash out of this address for no reason. I'm not telling you why.  Our position, Your Honor, is that it would make sense that they were informed of this information of why they were doing what they were doing. All right, Ms. Gallagher, thank you very much. We've taken you over your time, but we appreciate the help. Thank you very much, Your Honor. Okay, Mr. Caruso, you've got your full rebuttal time left. Thank you, Judge Jordan. The government didn't cite, and I couldn't find a single case that would allow this court reviewing the district court proceedings to rely on a matter that was not presented during the suppression briefing or hearing. There is just no case that supports that position and for good reasons. Talking about the scarce judicial resources we have, to have a full-blown briefing period and hearing only to have evidence come up in a stray remark at that months and months later after a conviction, surely cannot be the law. Why is it a stray remark? Pardon me? Why is it a stray remark, what appears in paragraphs four and five, when it offers an explanation for why they went into the bags? I mean, this case was crying out for an explanation for why they went into the bags. It offers an explanation. And not only does it offer the explanation of the why, but it particularly focuses on the defendant Morales by name and the residence, which was the object of the search. And it was never really challenged at any point by the defendant at the time of sentence. Your Honor, if that's the case, when the defense lawyer asked the court and the prosecutor, what other evidence did you have? And the prosecutor stood silent. I think that's telling about the import of this information. And as to the lack of objection, defense lawyers at sentencing after a conviction have to make these difficult choices as to what to object to. And it was really of no significance to Mr. Morales' sentencing. And the reason why I called it a stray remark was because there's just simply no identifying detail. Who this tip was given to, when it was transmitted, if it was transmitted to Detective Saliba. So we think it's not appropriate for this court to consider. But the bottom line under the Martin case is to establish probable cause, the government has to show or the state has to show two things. The defendant's connection to the house, which only appears in a conclusory statement in the affidavit, and the connection of the evidence to the house. And because of the lack of indicia of residency within the trash, it didn't satisfy that element as well. You know, if we look to the good faith argument, the government didn't sustain its burden. A reasonably well-trained officer, based on the cases that have been cited, would not have relied on this warrant. This was a rookie detective, presumably his first warrant. And he just did not show reasonable reliance on this warrant. We would also say that the cost benefit analysis is in Mr. Morales' favor. You know, the deterrent effect of suppression in this case would be very strong because essentially at bottom, it's lack of effort by the police to conduct a robust probable cause determination. And the cost is very minimal. The evidence recovered in these two trash pulls is a misdemeanor in Florida. Under 20 grams of marijuana is a misdemeanor. And can you imagine the unbridled discretion this court would be giving to the police if they could conduct a whole house search based on three stems and a few smoked blunts? Based on that evidence to search a person's entire home, I do not think that is something that the Fourth Amendment will allow. Thank you. All right. Thank you, Mr. Caruso. Thank you very much, Ms. Gatto. We appreciate it.